21-1718, Yanira Santiago-Martinez et al. v. Fundacion Damas, Inc. at this time. Would Attorney Efron please come to the podium and introduce himself on the record to begin? Good morning, Your Honors. I'm David Efron for the appellants. Would you like to reserve any time for rebuttal? Yes, five minutes, please. I'll give you three. Thank you. May it please the Court. The District Court erred when it dismissed the case on issue preclusion because this defense applies to litigation between the same parties, which is not the case here with appellants who have never filed a claim anywhere before regarding this matter, and the Damas Foundation, not Damas Hospital, is the new defendant. This is a violation of plaintiffs' due process rights because it imposed a judgment on this litigant who was not a party in a prior civil suit or prior bankruptcy proceedings, and never have these plaintiffs had an opportunity to be heard. These plaintiffs' claims have never been considered, unlike in the prior cases where previous litigants did have that opportunity. Firstly, Is there any evidence that the medical malpractice creditors in the bankruptcy lawsuit were acting as representatives? Not whatsoever. They were not claimants. They were not part of that medical malpractice claimant group. They had not filed their lawsuit at that time. They didn't file the lawsuit until 2016, and the bankruptcy proceeding was from 2010 to 2012. So, basically, there's no identity of parties, either on the plaintiff's side or on the defendant's side. There was never an opportunity to prove the ownership issue, and in a minute I'll tell you why this is important. The ownership issue of the hospital by the defendant, the Damas Foundation on the Merits, and the bankruptcy court's opinion of a few years earlier was not a final binding judgment for purposes of preclusion here. The only legal operator at the time of the delivery of this baby, and the owner of the hospital at that time, is Defendant Appellee Damas Foundation, Fundacion Damas. Now, the health department license to operate the hospital, license number 53, which is our plaintiff's appendix at page 92, that license is to the Damas Foundation, to the defendant here, not to the hospital. Other pages of the appendix, 94, 40, and 43, further confirm this, as in many other instances. This is important because under Puerto Rico law, under the Puerto Rico Civil Code, the law of Puerto Rico, Article 1802 and 1803, the operator and owner are vicariously liable for the employee's negligence. That's 31 L-P-R-A, LEPRA 5141. Even years before, in 2012, the malpractice claimants then, which these appellants were not a part of, they reserved the right to sue the foundation. Council, excuse me. In your brief, you comment on our Vargas-Colomb decision of 2017. You describe it as bad law. I gather you characterize it as bad law because you would like this panel to disregard that decision, not apply it here, and, of course, we cannot do that. So why does our decision in Vargas-Colomb not control the outcome here? It seems to me that's the essential argument you have to deal with. So why does that decision not control the outcome here? For several reasons, Your Honor, and thank you for your question. These appellants were never creditors in that bankruptcy proceeding. There's no identity of the parties in this case, and they never had an opportunity to be heard. The bankruptcy court's opinion in Vargas and the subsequent orders in Vargas cannot apply to future cases that were not filed at that time. The Vargas in no way should bar these litigants from suing the foundation. Issue preclusion may have applied in Vargas. We disagreed, but issue preclusion may have applied in Vargas. But this is a stretch, I believe, to try to do that here. Counsel, the factual assertion that is at the heart of your appeal, which is that Fondacion Damas was the owner of the hospital at the time of the malpractice, that very specific issue was addressed by the bankruptcy court, and there was a finding that the foundation post-1987 did not own the hospital. It owned the land, but it leased it to the hospital. So the essential factual contention that you wish to make here, which is that the foundation was the owner of the hospital at the time of the malpractice, that was addressed, litigated, and decided in that bankruptcy proceeding, all of which we explained in Vargas Colón. So why doesn't that – what permits you to, in effect, want to relitigate that factual issue, which was litigated and resolved in the bankruptcy case and then used by us in Vargas Colón as the basis for applying non-mutual defensive collateral? You're just trying to undo that entire history, aren't you? No, Your Honor. It's a different situation. In the bankruptcy court, the ultimate issue in the bankruptcy case is not the same issue before us now. Those bankruptcy claimant – those malpractice claimants in the bankruptcy case were asking that the case be dismissed for fraud and bad faith based on the ownership of the hotel. The fact that the bankruptcy court gave them a pass by saying, well, they misrepresented what they said, but it wasn't intentional, and the evidence here and the evidence even in that case showed otherwise. The fact that the bankruptcy court, in wanting to confirm the bankruptcy, does not mean that it was proven, and it certainly is not a fact, and it's certainly not true, that the owner of the hospital, Damas, is Hospital Damas, Inc. The owner of the hospital, as has been shown throughout, is the Damas Foundation, which is the defendant in this case. It would be illegal for that hospital in bankruptcy to operate the hospital without a license when the license was not even in its name. It was in the name of the owner, and that is why this is not being relitigated. This is a new case. It should have been a new case. There's no identity of parties. The plaintiff was never given their day in court. You paraphrased me, and that's how I felt, that the Vargas case was bad law. Actually, I quoted you, counsel. I did not paraphrase you. I know. That's what I meant, Your Honor. I think it would also be unfair to apply that rule here. I know my time is up, so I'll be back for the report. No, you have three minutes left. Okay. Let's assume the issues are exactly the same in the bankruptcy proceedings. They're not. Let's assume they are. Yes. Do you still win? Do you still have a way of winning on issue preclusion? Yes. And what is it? Well, for issue preclusion to apply, there has to be identity of the parties, which we don't have here. There has to be an opportunity to the new plaintiff to approve the ownership issue of the hospital, which was not done here. There has to be – there are four issues that are required, which are not complied with, are not met in order for issue preclusion to kick in. So I think we should win anyway. But, you know, as I think Apelli in the brief basically relied on Vargas throughout the whole brief because that's the only leg they have to stand on. But I think we win anyway. Well, counsel, aren't we entitled – are we required to take the view that, yes, there's not identity of parties here. That is true. But the medical malpractice claimants in that bankruptcy proceeding had exactly the same interest as your clients here in establishing that the foundation was the owner of the hospital at the time that the malpractice occurred. And if that's the case, if their interest in achieving a certain outcome was identical to the interest of your client, they can be deemed to be an adequate representative of the interest of your client. Again, they had a stake in achieving the same outcome that your clients seek. They fully litigated it, and they were not successful. So why is it unfair under those circumstances to apply the outcome there to your clients here when they're trying to achieve exactly the same result as the medical malpractice claimants in that bankruptcy case? Because the medical malpractice claim in this case didn't occur until years later. It wasn't until four years later that the plaintiffs in this case realized that they actually had a medical malpractice claim. So therefore, the medical malpractice claimants in the bankruptcy six years earlier were in no way or could in no way be representing them. We would still be in the same position that they haven't had their day in court, they haven't had their case heard, and they were not represented by anybody similarly situated because their cause of action had not been raised at that point. What facts could change the conclusion about ownership? Well, there's plenty of evidence that the district court refused to consider, which we submitted to the court. It would require probably an evidentiary hearing, but let's start with the licenses. License number 53 given to the real owner, the Damas Foundation, not the hospital, to operate that hospital. Let's talk about every single license and every single authorization from the Puerto Rico Department of Health that was given to the hospital is under the ownership of the defendant in this case, the appellee in this case. And it's in, I think I quoted it, it starts at pages 92, 94, 40, and 43 of the plaintiff's appendix. That's to start off with. There's also testimony from Department of Health officials and other officials that would basically state that it would be illegal for a hospital that does not hold the license in its name to even give and offer medical services and hospital services to patients. Your time is up. Thank you. Just very quickly. I may have this wrong. I thought there was a Commonwealth proceeding, a decision that dealt with this licensing issue, the documentation, whether the ownership was consistent with the documentation. But the ruling was that was an issue between the hospital and the Commonwealth. That did not affect the bankruptcy court determination as to ownership. That was a matter for the Commonwealth and the relevant departments of the Commonwealth to deal with if there was a licensing issue. Am I correct that there was a ruling to that effect by a Commonwealth court? Is that correct? There were several rulings by the Commonwealth Court of Appeals. I wasn't involved in any of those cases, but I have seen some of those decisions which state exactly what we're stating, which is to the effect that there might be some contrary. But the ones I've seen basically tell us that the foundation owns the hospital. In addition, I think your question was too broad. You asked if the bankruptcy court did not take that into consideration. Actually, it did, but it did it in a way where they were looking at the fraud claims that were raised by those malpractice claimants against the hospital. And ruled it only in that way by almost telling them, well, you know, maybe it was an oversight. It wasn't a clear and convincing statement that the bankrupt hospital was the owner. And the evidence belied it. Thank you, Your Honor. Thank you.  Thank you. Thank you, counsel. At this time, would Attorney Perez-Gonzalez please introduce himself on the record to begin? Good morning, Your Honors. Freddy Perez-Gonzalez on behalf of Appellee Fundacion Damas. This case is one of many, many, many cases that has been filed against Fundacion Damas, trying to blame Fundacion for incidents and medical malpractices that have occurred in Hospital Damas. And that issue was initially decided, as the court knows, by the bankruptcy court in its ruling, and it has been sustained by many other cases by the district court, by this circuit court, particularly in the case of Vargas Colon, which was mentioned during the discussion with the appellate. It is important to notice the broader counsel that represents the appellate in this case was the one that represented the plaintiffs in the Vargas Colon case. And thus, the Vargas Colon case decided all the issues that the appellants are claiming in this case, except for an issue that broader counsel hasn't discussed. And it's the issue that, and the doctrine that was adopted and used by the district court and its privity, which has been amply discussed. And the concept of privity has established that you don't need to be a party to a case if your interest has been represented by another party. In the Vargas Colon case, this circuit decided that even though Fundacion was not a party to the case or to the bankruptcy court proceedings, Fundacion was favored by the doctrine of issue preclusion and collateral estoppel because the issue decided in the bankruptcy court and argued in all the cases was the same. Who was the owner of Hospital Damas at the time that the medical malpractices occurred? And the bankruptcy court explicitly decided that since 1987, the owner has been Hospital Damas, Inc., which is a separate corporation from Fundacion Damas, Inc. As to the other issues, aside from the identity of parties that broader counsel mentioned, is the issue of the license. And the issue of the license was specifically addressed by the bankruptcy court. And I refer to the bankruptcy court opinion. Sorry. Bear with me. It's at page 43 of our appendix, which is pages 10 and 11 of the bankruptcy court order. And there, addressing the same issue, because the medical malpractice claimants in the bankruptcy court claimed the same issue about the licensing. And the court stated, the agency specially tasked with licensing, regulating, and policing the debtor operation is the Puerto Rico Department of Health. And then it stated, the court will not substitute the opinion of the Secretary of Health in health-related matters of what is the public interest of the move-ons. So, and the court specifically decided that the Puerto Rico Department of Health has known at least since 2001 that the debtor has been operating and administering Hospital Damas, and that the Puerto Rico Department of Health has itself been inconsistent in the issues of licenses. So, that same issue was addressed by the Varga-Colón case. And at footnote 27 of that opinion, the court mentions all the documents that Rural Council has addressed to this court. And it determined that nothing there prevented the ruling that Fundación was not the party to blame for the malpractices committed at Hospital Damas because of the ruling of the bankruptcy court. In regard... Counsel, I'd like to ask you something, please. The opposing counsel points out that the medical malpractice claimants here, unlike the medical malpractice claimants in Varga-Colón, were not participants in the bankruptcy proceeding. Their claim comes some years later. You mentioned the doctrine of privity. Are you suggesting that privity can be established by an identity of interest between previous claimants who actually participated in a proceeding that resulted in a factual determination and a subsequent claimant such as we have here, who, although not formally part of those proceedings, has exactly the same interests as those earlier medical malpractice claimants? Is that... Because it seems to me that's what you... In order to insist that the doctrine of non-mutual defense of collateral estoppel applies, you have to establish that there is that identity of interest between the claimants here and those earlier medical malpractice claimants. And is that your argument here, that there is that identity of interest and that suffices to meet the privity requirement? Yes, Your Honor, exactly. And that was the ruling of the district court precisely because the medical malpractice claimants in the bankruptcy court were representing the same interests as the plaintiffs in this case. And... And is that position enhanced by the fact that we have the same attorney involved in... Is that relevant, that it's the same attorney, or is that just happenstance? No, no, no. That's a coincidence that it's the same attorney. That doesn't have to have a bearing on this case. But the district court basically relied on several fellow cases. It's the court of the United States versus Bonilla-Romero, 836 federal seconds, 39 of this circuit. And the Bonilla case relied on Supreme Court cases citing Montana versus United States, 440 U.S., 149. And Chicago R.I. and P.R.Y. company versus Schendel, 270 U.S., 611. So privity is a well-established doctrine. And you don't need to be a party. If we could just circle back to that question, though, because I was looking at Taylor versus Sergo, which I think you mentioned in your brief, which is also a Supreme Court case, where there were two very similarly situated plaintiffs in two different cases with the same attorneys. One case came first, then the second case. And in the Taylor, the Supreme Court said, no, no issue conclusion here. There's no identity of issues. The parties, even though they were represented by the same attorneys, they weren't parties to the same proceedings. And so I'm wondering if you can focus down here on just the same questions that Joshua has asked you. How are we to see the privity between these two plaintiffs? The plaintiffs are different in these two cases. Not only the plaintiffs. The defendant is different because Funasin was not a party. But even though based on privity, plaintiffs are precluded because what was litigated in the bankruptcy court was exactly what is being litigated in this case. So that would be identity of interest? That would be identity of interest, yes. Because the issue claimed there was that Funasin Damas was the owner of the hospital and was responsible for the medical malpractice occurred in the hospital. And the bankruptcy court decided to the contrary, and that was exactly its claim in this case by plaintiffs, that Funasin is the owner of the hospital. And it's been well-established by the circuit and by the district court in many, many cases that we cite in our brief that the bankruptcy court decided to the contrary. So that's our point. If you don't have any further questions, that will be it for us. Judge Lopez, do you have any further questions? Nothing further. Thank you. Thank you very much. Thank you. Thank you, counsel. At this time, would Attorney Efron please introduce himself back on the record? He has a three-minute rebuttal. Yes. David Efron for the appellant. Damas Foundation is sued because they are liable as owner-operator under Puerto Rico law. Appellants were not represented by any similarly situated parties six years earlier in the bankruptcy. The issue which the district court used of privity was used incorrectly. It has the same requirements as some of the other things that were raised, and it fails at the very first one. There's no identity of parties by either party. Excuse me, counsel. Counsel, how can you say that your clients here are not similarly situated to the medical malpractice claimants in that earlier case? They are asserting exactly the same position with respect to ownership. They have the exact same interest in achieving an outcome, which would establish that the foundation was the owner of the hospital at the time of the malpractice. It could be. I don't. It seems to. Okay. I'm sorry. I'm sorry. I didn't mean to interrupt you, Your Honor. I'm sorry. I thought you were done. No, no. It seems to me that with respect to being similarly situated, there is no meaningful difference between the two. I guess that's my essential question. These appellants didn't even exist as litigants when all of that came about in the bankruptcy court. I think by now we realize what those malpractice claimants were arguing all along, that the owner was the foundation and that they did everything through an insolvent company so that they could keep the money in the foundation and not pay malpractice victims. That was the whole scheme of having the foundation own a hospital. How was their interest? Well, their interest, first of all, the plaintiff's interest, in this case the appellant's interest, did not even exist because they had not even made a claim. I understand the claim. After the fact, maybe they would have handled things differently as far as trying to show that they were not given an opportunity to show that the foundation was the owner of the hospital in a way that was maybe convincing enough for the bankruptcy court or to a district court on appeal subsequently. So in that sense, I think that the appellant's rights have never been represented in this case. Now, we feel that using privity here by the district court was absolutely wrong and it violated my client's due process rights to be heard at trial. Judge Helpe ends his opinion by saying, and I quote, the point of collateral estoppel is that the first determination is binding, not because it is right, but because it is first. That should not apply here where neither any of the plaintiffs nor any defendants were parties to any prior case. The court was wrong in settling these appellants with a prior case they did not participate in. On a personal level, it pains me somewhat to say this because I am very fond of Judge Helpe and I'm very proud that he's now sitting among you in the First Circuit, but the law underscores clearly what I must do for my clients. Thank you for your attention, Your Honors. Judge Lopez, do you have anything further? Nothing further. Thank you. Thank you. That ends argument in this case. Counsel is excused.